UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE NEW MEXICO ENVIRONMENT DEPARTMENT, <br><br> Plaintiffs, <br><br> v. <br><br> APACHE CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. |

## COMPLAINT

Plaintiffs, the United States of America, by authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the New Mexico Environment Department ("NMED"), by authority of the Attorney General of New Mexico, file this Complaint and allege as follows:

### **NATURE OF ACTION**

1.      This is a civil action against Apache Corporation ("Apache" or "Defendant") for violations of the Clean Air Act (the "CAA" or "Act"), 42 U.S.C. § 7401 *et seq.*, the New Mexico Air Quality Control Act ("AQCA"), NMSA § 74-2-1 to -17, and the Texas Clean Air Act ("TCAA"), Texas Health and Safety Code Chapter 382, at 23 of Apache's oil and natural gas production facilities located in Lea and Eddy Counties, New Mexico and Loving and Reeves Counties, Texas.

2.     Plaintiffs seek injunctive relief and civil penalties under Section 113 of the CAA, 42 U.S.C. § 7413, Sections 74-2-12 and 74-2-12.1 of the AQCA, and Sections 7.002, 7.032 and 7.105 of the Texas Water Code, for violations of one or more of the following provisions arising from operations at Apache's oil and natural gas production systems:

a.  Section 111(e) of the CAA, 42 U.S.C. § 7411(e), and its implementing regulations;

b.  the New Source Performance Standards ("NSPS") for Crude Oil and Natural Gas Production, Transmission and Distribution for Which Construction, Modification or Reconstruction Commenced After August 23, 2011 and On or Before September 18, 2015, 40 C.F.R. Part 60, Subpart OOOO ("NSPS Subpart OOOO");

c.  the NSPS for Crude Oil and Natural Gas Facilities for Which Construction, Modification, or Reconstruction Commenced After September 18, 2015, 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa");

d.  New Mexico's federally approved State Implementation Plan ("SIP"), including Section 74-2-7 of the AQCA and its implementing regulations, including the provisions of the NMED Air Quality Bureau General Construction Permit for Combustion Sources and Related Equipment ("GCP-4"), issued on October 20, 2003 and the NMED Air Quality Bureau General Construction Permit for Oil and Gas Facilities ("GCP-O&G"), issued on April 27, 2018, both pursuant to 20.2.72.220 New Mexico Administrative Code ("NMAC"); and

e.  Texas's federally approved SIP, including the regulations governing the

control of air pollution by permits for new construction and modification at 30

Texas Administrative Code ("TAC") Chapter 116 (Control of Air Pollution by

Permits for New Construction or Modification) and the provisions of the

Texas Commission on Environmental Quality ("TCEQ") Permits by Rule

provisions at 30 TAC Chapter 106.

3.      Apache's failure to comply with these requirements has resulted in, and may

continue to result in, unlawful and significant excess emissions of volatile organic compounds

("VOCs") and oxides of nitrogen ("NO$_x$"), precursors to ground-level ozone (or "smog"), as well

as carbon monoxide ("CO"). Ozone, NO$_x$, and CO are all criteria pollutants for which EPA has

promulgated National Ambient Air Quality Standards ("NAAQS") due to the pollutants' adverse

effects on human health and the environment.

<u>**JURISDICTION AND VENUE**</u>

4.      This Court has jurisdiction over the CAA claims pursuant to Section 113(b) of the

Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5.      This Court has supplemental jurisdiction over NMED's state law claims pursuant

to 28 U.S.C. § 1367 because those claims are so related to the claims in the United States' action

that they form part of the same case or controversy.

6.      Venue is proper in this District under Section 113(b) of the Act, 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because a substantial number of the violations

that are the basis of this Complaint occurred at facilities Defendant owns and operates in this

District.

<u>**AUTHORITY AND NOTICES**</u>

7.      The Attorney General has authority to bring this action on behalf of the

Administrator of the EPA under 28 U.S.C. §§ 516, 519 and Section 305 of the CAA, 42 U.S.C. § 7605.

8.     The New Mexico Attorney General has authority to bring this action on behalf of the Secretary of NMED under Sections 74-2-12 and 74-2-12.1 of the AQCA.

9.     The United States has authority to bring this action to enforce the regulations in the Texas SIP under 42 U.S.C. § 7413(a).

10.     Notice of the commencement of this action was provided to Apache and to the State of New Mexico and the State of Texas at least 30 days prior to the filing of this Complaint pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1).

## DEFENDANT

11.     Apache is an oil and natural gas exploration and production company incorporated in the State of Delaware and registered to transact business as a Foreign Profit Corporation in the State of New Mexico and the State of Texas.

12.     Apache's corporate headquarters are located at 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056.

13.     Apache is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. §7602(e), Section 74-2-2(O) of the AQCA, and Section 382.003(10) of the TCAA.

## CLEAN AIR ACT ENFORCEMENT HISTORY

14.     On September 11, 2020, EPA, in coordination with NMED, issued a Notice of Violation and Finding of Violation to Apache pursuant to Section 113(a) of the CAA, citing violations of the CAA, NSPS Subparts OOOO and OOOOa, the New Mexico SIP, and federal and New Mexico state Title V operating permit regulations at a number of oil and natural gas production systems in New Mexico.

15. On December 29, 2020, EPA issued a Notice of Violation and Opportunity to Confer to Apache, pursuant to Section 113(a) of the CAA, citing violations of the CAA, NSPS Subpart OOOOa, the Texas SIP, and federal and Texas state Title V operating permit regulations at a number of oil and gas production systems in Texas.

## FACILITIES

16. Apache owns and operates hundreds of oil and natural gas production wells in the Permian Basin in both New Mexico and Texas. The facilities that are the subject of this Complaint are listed in Table 1, below.

| Table 1 | | |
|---|---|---|
| **Facility Name** | **County** | **State** |
| Tony Federal Battery | Eddy | NM |
| Thunderbird A Battery | Eddy | NM |
| Outlaw State Battery | Eddy | NM |
| Salt Fork 3-4 Fed Com Battery | Eddy | NM |
| Palmillo 14-15 Battery | Eddy | NM |
| Black & Tan 27 Fed Com Battery | Eddy | NM |
| Palmillo 14 Battery | Eddy | NM |
| Raven Federal Battery | Lea | NM |
| Crow Federal Battery | Lea | NM |
| NE Drinkard Satellite Battery | Lea | NM |
| NE Drinkard Central Tank Battery/Satellite Battery No. 3 | Lea | NM |
| Bull Run Battery | Reeves | TX |
| Lee Central Tank Battery | Reeves | TX |
| Dixieland Lee Compressor Station | Reeves | TX |
| Dixieland Grant Compressor Station | Reeves | TX |
| Bragg Central Tank Battery | Reeves | TX |
| Navajo Central Tank Battery | Reeves | TX |
| Falcon Compressor Station | Loving | TX |
| Falcon Central Tank Battery | Loving | TX |
| Falcon 2 Central Tank Battery | Loving | TX |
| Seagull-Pelican Central Tank Battery | Loving | TX |
| Chaparral 89 Central Tank Battery | Loving | TX |
| Magpie Cardinal Central Tank Battery | Loving | TX |

17. At all relevant times, Apache was and is the "owner and operator" of the facilities

listed in Table 1 within the meaning of Section 111(a)(5) of the Act, 42 U.S.C. § 7411(a)(5).

**Oil and Gas Production Operations at the Facilities**

18.     The facilities include wells that produce a mixture of oil, natural gas, and saltwater (also known as "produced water") from subsurface rock formations. This mixture flows up the well under pressure to the well-head at the surface and then is directed to separation equipment that, depending on the characteristics of the well mixture, consists of one or more vessels, including a three-phase separator, heater-treater, and vapor recovery tower ("VRT"). The separation equipment separates the effluent from the well into its constituent parts: hydrocarbon liquids, natural gas, and produced water.

19.     The separated natural gas is sent to a sales gas pipeline or, if the sales gas pipeline is unavailable, it may be burned in a flare or other combustion device.

20.     As natural gas moves through a sales gas pipeline, its pressure may decrease, thus slowing its flow rate through the pipeline. To repressurize the natural gas, the gas is sometimes directed to a compressor station, which increases the pressure and flow rate of the gas. After being repressurized, the natural gas may then be returned to the pipeline system or sent for processing.

21.     The oil in the storage vessels is hauled or piped away for sale and the produced water is transported away from the facility or recycled.

**Releases of VOCs and Other Hydrocarbon Vapors**

22.     Both during the process of transferring oil to a storage tank and during the period that the oil resides in the storage tank at the facility before it is hauled away, hydrocarbon vapors—including VOCs, methane (a greenhouse gas), and pollutants classified by the EPA as hazardous air pollutants ("HAP"), such as benzene—can be released from the tank into the

atmosphere if not properly managed.

23.     The liquids continue to emit vapors when temperatures fluctuate in the storage

vessels and when liquids are being loaded into or out of the storage vessel. All of these emissions

must be managed, both to prevent over-pressurization of the storage vessel and to prevent the

release of uncontrolled gases, including VOC, methane, and HAP emissions, into the

atmosphere.

24.     Storage vessels are equipped with openings called "thief hatches" and pressure

relief valves ("PRVs") that are designed to open (or "vent") as needed to relieve pressure or

provide access to the tank contents, and to seal tightly when closed. Thief hatches and PRVs are

collectively known as pressure relief devices ("PRDs"). Generally, properly maintained PRDs do

not vent emissions to the atmosphere during normal operations, except when the PRD is actively

being used (*e.g.*, during tank gauging, inspections, and maintenance).

25.     The storage vessels, control devices (*e.g.*, flares), vent lines, and all connections,

fittings, PRDs, and any other appurtenances used to contain, collect, and convey vapors are

collectively known as the Vapor Control System ("VCS"). A well-designed and well-maintained

VCS captures and routes vapors through a series of pipes or vent lines either to a flare or "to

process" through a vapor recovery unit ("VRU"), where vapors are recycled or recovered.

26.     Compressors are engine-driven equipment used to increase pressure and route gas

to the sales pipeline. Compressors are also used to facilitate removal of fluids from a well. A

VRU is also a type of compressor.

27.     Apache's operations at the facilities that are the subject of this Complaint have

resulted in unlawful emissions of VOCs, $NO_x$, and CO. An insufficiently designed or poorly

maintained and operated VCS may result in the venting of VOC emissions during normal

operations. The combustion of produced natural gas at heater-treaters, compressors, and flares results in emissions of $NO_x$ and CO.

## STATUTORY AND REGULATORY BACKGROUND

28.     As set forth in Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1), the purpose of the CAA is to protect and enhance the quality of the nation's air resources to promote the public health and welfare and the productive capacity of its population.

## I.     Federal Law: The Clean Air Act's New Source Performance Standards

29.     Section 111(b) of the Act, 42 U.S.C. § 7411(b), authorizes EPA to promulgate standards of performance applicable to "new sources" within categories of sources that cause or contribute significantly to "air pollution which may reasonably be anticipated to endanger public health or welfare." These regulations are referred to as New Source Performance Standards ("NSPS").

30.     A "new source" is any stationary source, the construction or modification of which is commenced after the promulgation of the standards of performance that will apply to such source. 42 U.S.C. § 7411(a)(2). A "stationary source" is a building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

31.     In 1979, the EPA listed "Crude Oil and Natural Gas Production" as a source category that contributes significantly to air pollution and for which standards of performance would be established. 44 Fed. Reg. 49,222 (Aug. 21, 1979).

32.     It is unlawful for owners or operators of any new source to operate in violation of any NSPS after the effective date of the standards. 42 U.S.C. § 7411(e).

33.     In 2012, the EPA promulgated NSPS regulations for the crude oil and natural gas production, transmission, and distribution industry sector. 77 Fed. Reg. 49,542 (Aug. 16, 2012).

These standards were codified at 40 C.F.R. Part 60, Subpart OOOO ("NSPS Subpart OOOO").
40 C.F.R. § 60.5360. NSPS Subpart OOOO applies to onshore affected facilities for which
owners or operators commenced construction, modification, or reconstruction after August 23,
2011, and on or before September 18, 2015. 40 C.F.R. § 60.5365.

34.     In 2016, the EPA amended the 2012 NSPS. 81 Fed. Reg. 35,898 (June 3, 2016).
These standards were codified at 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa").
40 C.F.R. § 60.5360a. NSPS Subpart OOOOa applies to affected facilities for which owners or
operators commenced construction, modification, or reconstruction after September 18, 2015.
40 C.F.R. § 60.5365a.

35.     All of the facilities at issue in this Complaint either commenced construction,
modification or reconstruction after August 23, 2011, and on or before September 18, 2015, and
thus are potentially subject to NSPS Subpart OOOO; or commenced construction, modification
or reconstruction after September 18, 2015, and thus are potentially subject to NSPS Subpart
OOOOa.

36.     Among the types of "affected facilities" subject to NSPS Subparts OOOO or
OOOOa are "storage vessel affected facilities." 40 C.F.R. §§ 60.5365(e) and 60.5365a(e). A
"storage vessel affected facility" is a single storage vessel, as defined in 40 C.F.R. §§ 60.5430
and 60.5430a, with the potential for VOC emissions equal to or greater than 6 tons per year (tpy)
as determined according to 40 C.F.R. § 60.5365(e) and 60.5365a(e)(1).

37.     NSPS Subpart OOOO and OOOOa require that "[a]t all times, including periods
of startup, shutdown, and malfunction, owners and operators shall maintain and operate any
affected facility including associated air pollution control equipment in a manner consistent with
good air pollution control practice for minimizing emissions." 40 C.F.R. §§ 60.5370(b),

60.5370a(b).

38.     Pursuant to 40 C.F.R. §§ 60.5395(d) and 60.5395a(a)(2), owners and operators of storage vessel affected facilities must reduce VOC emissions by 95.0 percent according to a specified schedule.

39.     Pursuant to 40 C.F.R. §§ 60.5395(e) and 60.5395a(b), if the owner or operator of a storage vessel affected facility uses a control device or routes emissions to a process to reduce VOC emissions from a storage vessel affected facility pursuant to the 95 percent emissions reduction requirement of § 60.5395(d)(1) or § 60.5395a(a), the owner or operator must equip the storage vessel with a cover connected to a closed vent system and route emissions to a control device or process, as required below:

a.     The cover must meet the requirements of 40 C.F.R. §§ 60.5411(b) and 60.5411a(b);

b.     The closed vent system must meet the requirements of 40 C.F.R. §§ 60.5411(c), and 60.5411a(c) and 60.5411a(d); and,

c.     The control device must meet the requirements of 40 C.F.R. §§ 60.5412(c) and 60.5412(d), and 60.5412a(c) and 60.5412a(d).

40.     Owners and operators of storage vessel affected facilities must demonstrate initial compliance with standards as required by §§ 60.5410(h)-(i) and 60.5410a(h)-(i); demonstrate continuous compliance with standards as required by §§ 60.5415(e)(3) and 60.5415a(e)(3); conduct an assessment that the closed vent system is of sufficient design and capacity to ensure that all emissions from the storage vessel affected facility are routed to the control device and that the control device is of sufficient design and capacity to accommodate all emissions from the storage vessel affected facility, as required by 40 C.F.R. § 60.5411a(d)(1); and perform the

required notification, recordkeeping, and reporting as required by §§ 60.5420 and 60.5420a. *See* 40 C.F.R. §§ 60.5395(d) and 60.5395a(d).

41.     EPA has delegated authority to New Mexico and Texas to implement and enforce the NSPS in the respective states pursuant to Section 111(c) of the CAA, 42 U.S.C. § 7411(c). The NSPS regulations have been incorporated by reference into the New Mexico regulations in the New Mexico Administrative Code and are federally enforceable. *See* NMAC 20.2.77.9; 40 C.F.R. §§ 60.4(b)(33); 60.4(e)(1). The NSPS regulations have also been incorporated by reference into the Texas regulations in the Texas Administrative Code and are federally enforceable. *See* 40 C.F.R. §§ 60.4(b)(45); 30 TAC § 101.20.

42.     NMED was delegated authority for NSPS Subpart OOOO effective April 3, 2015, and for NSPS Subpart OOOOa effective October 12, 2018, for the State of New Mexico. *See* 80 Fed. Reg. 5475 (Feb. 2, 2015) and 83 Fed. Reg. 46107 (Sept. 12, 2018).

43.     The State of Texas was delegated authority to implement and enforce all previously adopted and all future NSPS programs, as of the effective date of December 28, 1982. *See* 48 Fed. Reg. 20,693 (May 9, 1983).

## II.     National Ambient Air Quality Standards for Ozone and State Implementation Plans

44.     Section 108(a) of the CAA, 42 U.S.C. § 7408(a), directs the EPA to identify air pollutants that "may reasonably be anticipated to endanger public health or welfare" and to issue air quality standards for these pollutants based on the latest scientific knowledge about their effects on public health and the environment. These pollutants are known as "criteria pollutants" and the established standards are known as National Ambient Air Quality Standards "("NAAQS") for criteria pollutants. 42 U.S.C. § 7409.

45.     Pursuant to Sections 108 and 109 of the Act, 42 U.S.C. §§ 7408 and 7409, the

EPA has identified six criteria pollutants: ozone, $NO_x$, sulfur dioxide, CO, particulate matter, and lead. *See* 40 C.F.R. Part 50. Unlike the other criteria pollutants, ozone is not directly emitted but instead is formed in the atmosphere through photochemical reactions involving VOCs and $NO_x$ ("ozone precursors") in the presence of sunlight. Thus, VOC and $NO_x$ are subject to regulation as part of the NAAQS for ozone. 40 C.F.R. §§ 50.6 to 50.11.

46.     Following promulgation of new or revised NAAQS, EPA is required to designate all areas within each state as in attainment, in nonattainment, or unclassifiable for the standard within two years. *See* 42 U.S.C. § 7407(d). If the concentrations of a criteria pollutant in a geographic area meet or fall below the NAAQS, the area is designated as in "attainment" of the standard. Areas that exceed the NAAQS are designated as "nonattainment" areas. Areas that do not have monitoring data available are designated as "attainment/unclassifiable" or "unclassifiable."

47.     Lea and Eddy Counties, New Mexico, and Reeves and Loving Counties, Texas, where the relevant facilities owned and operated by Apache are located, are currently classified as in attainment of the NAAQS for all criteria pollutants. However, during the timeframes relevant to this Complaint, air quality monitors in Lea and Eddy Counties registered rising ozone concentrations that have exceeded 95 percent of the NAAQS for ozone.

48.     Section 110(a) of the Act, 42 U.S.C. § 7410(a), requires each state to adopt and submit to the Administrator of the EPA a plan that provides for implementation, maintenance, and enforcement for each promulgated NAAQS in each air quality control region (or portion thereof). Each such plan, known as a SIP, must include enforceable emission limitations and other control measures as well as a permit program to ensure that NAAQSs are achieved. 42 U.S.C. § 7410(a)(2)(A).

49.     Pursuant to Section 113(a) and (b) of the CAA, 42 U.S.C. § 7413(a) and (b), upon EPA approval, SIP requirements are federally enforceable under Section 113. Under 40 C.F.R. § 52.23, any permit limitation or condition contained within a permit issued under an EPA-approved program that is incorporated in a SIP is a requirement of the SIP and is federally enforceable under Section 113. Failure to comply with an EPA-approved SIP or a state permit issued as part of an EPA-approved SIP is a violation of the implementation plan and subject to a federal enforcement action. *See* 42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.

**III.     New Mexico State Implementation Plan**

50.     The regulations that comprise the New Mexico SIP as approved by the EPA are set forth in 40 C.F.R. § 52.1620(c). These regulations are codified at Title 20, Chapter 2 of the NMAC.

51.     Pursuant to the provisions of 20.2.72.220 NMAC, NMED issued the Air Quality Bureau General Construction Permit for Combustion Sources and Related Equipment ("GCP-4") on October 20, 2003 and the Air Quality Bureau General Construction Permit for Oil and Gas ("GCP-Oil and Gas") on April 27, 2018. Each GCP issued by the Air Quality Bureau addresses a group of sources that have similar operations, processes, and emissions and that are subject to similar requirements. Facilities that are registered under a GCP are subject to the terms and conditions of that GCP.

52.     Pursuant to 20.2.72.200 NMAC, construction permits must be obtained from NMED by any person constructing or modifying a stationary source which has a potential emission rate greater than 10 pounds per hour or 25 tons per year of any regulated air contaminant for which there is a National or New Mexico Ambient Air Quality Standard, including CO and $NO_x$.

53.     All sources subject to Part 20.2.72 NMAC must file a construction permit application prior to the commencement of construction, modification, or installation. No construction, modification, or installation shall begin prior to the issuance of the permit, regardless of the anticipated commencement date. *See* 20.2.72.200.E NMAC.

54.     Upon approval of a GCP Registration Form by NMED, the owner or operators must construct, modify, and operate the source in accordance with all the GCP conditions, and all representations made in the Registration Form. *See* GCP-4 Conditions V.1-4 and VI.1 and GCP-Oil and Gas Condition B101.A. The emission limits and equipment specified in the Registration Form are federally enforceable, and shall become the terms and conditions of the Permit. *See* GCP-Oil and Gas Conditions A100.D, A100.F.

55.     GCP-4 Condition VII.5 requires owners and operators who choose to comply with allowable emissions limits by controlling gas streams via flares to equip such flares with a mechanism to ensure a continuous ignition source whenever gas is present. All routine, non-emergency flares shall be operated with no visible emissions.

56.     GCP-4 Condition VIII.5 requires owners and operators to verify weekly that all routine, non-emergency flares are operating with no visible emissions and that the continuous ignition source is functioning properly. Owners and operators must maintain a log of verifications.

57.     GCP-4 Condition VII.10 requires owners and operators who choose to comply with allowable emissions limits for storage tanks through the use of a Vapor Recovery Unit ("VRU") to operate as a closed loop system that captures and routes VOCs back to the process stream and does not vent to the atmosphere.

58.     GCP-4 Condition VIII.10 requires that owners and operators inspect VRUs once

per month and verify that the equipment is working properly.

59.     GCP-Oil and Gas Specific Condition A205.B requires owners and operators who choose to comply with allowable emissions limits for storage tanks through the use of an NMED-approved control device, and/or routing the emissions to a process, to operate the control device and/or VRU as a closed vent system that captures and routes all emissions from tanks back to the process stream or to the control device and does not vent to the atmosphere.

60.     GCP-Oil and Gas Specific Condition A209.A(1) requires permittees to demonstrate compliance with the allowable emission limits for equipment controlled by VRUs by operating the VRU as a closed vent system that captures and routes all VOC emissions from units listed in the Registration Form back to the process stream or to a sales pipeline, and which does not vent to the atmosphere.

61.     GCP-Oil and Gas Specific Conditions A106.A and A106.C establish allowable hourly and annual emission limits in the Registration Form and require permittees to demonstrate compliance with such limits by complying with the process parameters required for each piece of authorized equipment, as established in the Registration Form.

## IV.    Texas State Implementation Plan

62.     The regulations that comprise the Texas SIP as approved by the EPA are set forth in 40 C.F.R. § 52.2270(c).  The Texas SIP regulations governing the control of air pollution by permits for new construction and modification are codified at 30 TAC, Chapter 116.

63.     Pursuant to 30 TAC § 116.110(a), any person who plans to construct any new facility or to engage in the modification of any existing facility which may emit air contaminants into the air of the state of Texas, is required to:

        a.   obtain a permit under 30 TAC § 116.111 (relating to General Application);

b. satisfy the conditions of a standard permit (under Subchapter F of 30 TAC, Chapter 116) such as the Oil and Gas Standard Permit (Non-rule) adopted pursuant to 30 TAC §§ 116.602 and 116.603;

c. satisfy the conditions of a flexible permit under Subchapter G of 30 TAC, Chapter 116;

d. satisfy the conditions of a permit by rule ("PBR") under 30 TAC, Chapter 106; or

e. satisfy the criteria for a de minimis facility or source under 30 TAC § 116.119.

## V.    TCEQ Oil and Gas Standard Permit (Non-rule)

64.    As referenced in Paragraph 63(b) above, TCEQ adopted the Oil and Gas Standard Permit (Non-rule) ("NRSP") pursuant to the provisions of 30 TAC §§ 116.602 and 116.603. The rule was initially adopted on January 26, 2011. The amended NRSP became effective on November 8, 2012 and remains effective.

65.    Among other things, the NRSP specifically requires that:

a. All facilities that have the potential to emit air contaminants must be maintained in good working order and operated properly during facility operations. NRSP Paragraph (e)(1);

b. All process equipment and storage facilities individually must meet the Best Available Control Technology requirements and any combination of process equipment and storage facilities with an uncontrolled potential to emit equal to or greater than 25 tpy of VOC are required to capture and route emissions to a control device with a minimum design control efficiency of at least 95 percent.

NRSP Paragraph (e)(5);

c.  All seals and gaskets in VOC service must be "installed, checked, and properly maintained to prevent leaking," and tank hatches must "remain closed . . . except for sampling, gauging, loading, unloading, or planned maintenance activities." NRSP Paragraph (e)(6); and

d.  "Flares must be lit at all times when gas streams are present." Pilot flame monitoring must meet the specifications in 40 C.F.R. § 60.18 and sufficient gas must be added to flares if necessary to ensure adequate combustion. NRSP Paragraph (e)(11).

66.  Additionally, the NRSP contains the following general conditions, among others, that are applicable to any facility covered by the NRSP:

a.  All representations with regard to construction plans, operating procedures, pollution control methods, and maximum emission rates in any registration for a standard permit become conditions upon which the facility or changes thereto, must be constructed and operated. It is unlawful for any person to vary from such representations if the change will affect that person's right to claim a standard permit. 30 TAC § 116.615(2); and

b.  Facilities may not be operated unless all air pollution emission capture and abatement equipment is maintained in good working order and operating properly during normal facility operations. 30 TAC § 116.615(9).

## VI.   TCEQ Permit by Rule

67.  As referenced in Paragraph 63(d) above, the State of Texas has established a permit by rule ("PBR") program, codified at 30 TAC Chapter 106, which applies to facilities that

TCEQ has determined will not make a significant contribution of air contaminants to the atmosphere. Specifically, the maximum actual VOC emissions for any facility operating under the PBR is 25 tpy. *See* 30 TAC § 106.4(a)(1)(B); *see also id.* §§ 106.352(b)(6)(F), 106.352(l)(2)

68.     Pursuant to 30 TAC § 106.4(c), all emissions control equipment must be maintained in good condition and operated properly during operation of the facility.

69.     Pursuant to 30 TAC § 106.6(b), all representations concerning construction plans, operating procedures, and maximum emissions rates in any certified registration under this section become conditions upon which the facility permitted by rule must be constructed and operated.

70.     Pursuant to 30 TAC § 106.6(c), it is unlawful for any person to vary from such representation referenced in § 106.6(b) if the change will cause a change in the method of control of emissions, the character of the emissions, or will result in an increase in the discharge of the various emissions, unless the certified registration is revised beforehand.

**VII.   <u>Applicable Enforcement Provisions</u>**

71.     Section 113 of the CAA, 42 U.S.C. § 7413, authorizes EPA to commence a civil action for injunctive relief and/or civil penalties against any person who has violated any requirement or prohibition of the CAA or regulations promulgated thereunder, or who has violated any applicable permit or implementation plan, such as the New Mexico SIP or Texas SIP.

72.     Any person, including an individual, corporation, or partnership, as defined in CAA Section 302(e), 42 U.S.C. § 7602(e), who violates any requirement or prohibition in CAA Subchapter I, Part A, including NSPS regulations promulgated thereunder, is subject to, among other things, a civil penalty of up to $121,275 per day for violations that occurred after

November 2, 2015, where penalties are assessed on or after December 27, 2023. *See* CAA

Section 113(b), 42 U.S.C. § 7413(b), as modified by the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection

Improvement Act of 1996, 31 U.S.C. § 3701 note, and most recently by the Federal Civil

Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74 § 701, 129

Stat. 584, 599–60; 40 C.F.R. § 19.4 and 88 Fed. Reg. 89309, 89312 (Dec. 27, 2023).

73.    Sections 74-2-12 and 74-2-12.1 of the AQCA authorize NMED to commence a

civil judicial action for appropriate relief, including civil penalties and injunctive relief, against

any person that has violated or is violating a requirement or prohibition of the AQCA, a

regulation promulgated pursuant to that Act, or a condition of a permit issued under that Act.

74.    A person who violates a provision of the AQCA or a regulation, permit condition,

or emergency order adopted or issued pursuant to that Act may be assessed a civil penalty not to

exceed $15,000 for each violation for each day during any portion of which the violation occurs.

NMSA § 74-2-12.1.

## GENERAL ALLEGATIONS

## I.    New Mexico Facilities

75.    On April 16-18, 2019, EPA and NMED officials inspected twelve (12) oil and

natural gas production facilities that were, at the time of the inspection, owned and operated by

Apache. During these inspections, the inspectors utilized optical gas imaging ("OGI")

technology to detect VOC and other hydrocarbons being emitted, a photoionization detector to

detect and measure VOC concentrations in the air, and olfactory, visual, and audio ("OVA")

methods.

76.    During the April 2019 inspections, inspectors observed significant unauthorized

emissions emanating from the storage vessel and closed vent system PRDs (*i.e.*, thief hatches on oil and produced water storage vessel covers or PRVs on the storage vessels' closed vent system) at the following seven (7) inspected facilities: Raven Federal Battery, Crow Federal Battery, Thunderbird A Battery, Outlaw State Battery, Salt Fork 3-4 Fed Com Battery, Palmillo 14-15 Battery, and Black and Tan 27 Fed Com Battery.

77.     During the April 2019 inspections, inspectors also observed the combustor at the Crow Federal Battery operating without a lit pilot and observed emissions coming from the top of the combustor. At the Thunderbird Battery, inspectors also observed emissions emanating from the combustor due to an apparent failure of the combustor to draw sufficient air to provide for adequate combustion.

78.     On September 11, 2020, EPA issued a Notice of Violation and Finding of Violation to Apache pursuant to Section 113(a)(3) of the CAA, citing violations of the CAA, NSPS Subparts OOOO and OOOOa, and the SIP at the seven oil and natural gas production facilities in New Mexico named in Paragraph 76.

79.     During the April 2019 inspections, inspectors also observed emissions emanating from oil tank thief hatches and related equipment at three additional facilities in New Mexico: Tony Federal Battery, NE Drinkard Satellite Battery and NE Drinkard Central Tank Battery/Satellite Battery No. 3.

80.     EPA periodically conducts helicopter surveillance of oil and gas operations in the Permian Basin in New Mexico and Texas using OGI technology to detect hydrocarbon emissions emanating from storage vessels and control devices. OGI is a video technology that provides a qualitative indication of VOC and other hydrocarbon emissions.

81.     On or around July 27-28, 2022, EPA's contractor conducted flyover surveillance

of an additional Apache facility in New Mexico, Palmillo 14, and observed unauthorized emissions at this facility emanating from a pressure relief valve. Shortly thereafter, EPA advised Apache of the observed emissions, provided OGI videos to Apache, and requested Apache to verify ownership of the facility and provide information regarding any corrective actions taken.

82.     In October, November and December of 2020, Apache responded to a request for information EPA made pursuant to Section 114 of the CAA, 42 U.S.C. § 7414 ("114 Request"), pertaining to Apache's facilities in New Mexico. On the basis of the information provided in the response, the Plaintiffs determined that the storage vessels located at the following six (6) Apache facilities have per-vessel VOC emissions greater than 6 tpy and satisfy other regulatory criteria, making such facilities "storage vessel affected facilities" as that term is used in 40 C.F.R. Part 60, Subparts OOOO and OOOOa, as applicable: Tony Federal Battery, Thunderbird A Battery, Outlaw State Battery, Salt Fork 3-4 Fed Com Battery, NE Drinkard Satellite Battery, and NE Drinkard Central Tank Battery/Satellite Battery No. 3.

83.     At the time of the EPA's inspection, the Raven Federal Battery and the Crow Federal Battery were registered under and subject to the conditions of GCP-4, and the Palmillo 14-15 Battery and Black and Tan Battery were registered under and subject to the terms of the GCP-Oil and Gas.

**II.     Texas Facilities**

84.     In September and October 2019, EPA's contractor conducted flyover surveillance using OGI technology over a portion of the Permian Basin and detected unauthorized VOC emissions emanating from four (4) facilities owned and operated by Apache in Texas: Bull Run Battery, Lee Central Tank Battery, Dixieland Lee Compressor Station, and Dixieland Grant Compressor Station.

85.     On December 29, 2020, EPA issued a Notice of Violation and Finding of Violation to Apache pursuant to Section 113(a)(3) of the CAA, citing violations at the four oil and natural gas production facilities in Texas named in Paragraph 84 of the CAA, the Texas SIP, and as to three of the facilities, of NSPS Subpart OOOOa.

86.     In September 2020, EPA's contractor again conducted flyover surveillance and detected unauthorized VOC emissions emanating from four (4) additional facilities owned and operated by Apache in Texas: Bragg Central Tank Battery, Falcon Compressor Station, Falcon Central Tank Battery, and Falcon 2 Central Tank Battery.

87.     In July and August 2022, EPA's contractor again conducted flyover surveillance and detected unauthorized VOC emissions emanating from five (5) facilities owned and operated by Apache (one of which was also the subject of detections in 2020): Seagull-Pelican Central Tank Battery, Chaparral 89 Central Tank Battery, Magpie Cardinal Central Tank Battery, Falcon Central Tank Battery, and Navajo Central Tank Battery.

88.     Following each flyover surveillance event, EPA advised Apache of the observed emissions, provided OGI videos to Apache, and requested Apache to verify ownership of the facility and provide information regarding any corrective actions taken.

89.     In February and March of 2021, Apache responded to a request for information EPA made pursuant to Section 114 of the CAA, 42 U.S.C. § 7414 ("114 Request"), pertaining to Apache's facilities in Texas. On the basis of the information provided in the response, the Plaintiffs determined that the storage vessels located at the following seven (7) Apache facilities have per-vessel VOC emissions greater than 6 tpy and satisfy other regulatory criteria, making such facilities "storage vessel affected facilities" as that term is used in 40 C.F.R. Part 60, Subpart OOOO and OOOOa, as applicable: Bull Run Battery, Lee Central Tank Battery,

Dixieland Lee Compressor Station, Bragg Central Tank Battery, Falcon Central Tank Battery, Falcon 2 Central Tank Battery, and Chaparral 89 Central Tank Battery.

90.     Upon information and belief and according to standard permit registration forms submitted by Apache to TCEQ and response letters from TCEQ, the permitting status of each of the Apache facilities in Texas that is subject of this Complaint, at the time of the flyover surveillance, is as follows:

| Table 2 | |
|---|---|
| Facility Name | Permitting Status |
| Bull Run Battery | Oil and Gas Standard Permit (Non-rule) |
| Lee Central Tank Battery | Oil and Gas Standard Permit (Non-rule) |
| Dixieland Lee Compressor Station | Oil and Gas Standard Permit (Non-rule) |
| Dixieland Grant Compressor Station | Oil and Gas Standard Permit (Non-rule) |
| Bragg Central Tank Battery | Permit by Rule |
| Falcon Central Tank Battery | Permit by Rule |
| Falcon 2 Central Tank Battery | Permit by Rule |
| Falcon Compressor Station | Oil and Gas Standard Permit (Non-rule) |
| Seagull-Pelican Central Tank Battery | Permit by Rule |
| Chaparral 89 Central Tank Battery | Permit by Rule |
| Magpie Cardinal Central Tank Battery | Oil and Gas Standard Permit (Non-rule) |
| Navajo Central Tank Battery | Permit by Rule |

91.     With respect to the six (6) facilities identified in Paragraph 90 as covered by an Oil and Gas Standard Permit (Non-rule) at the time of the flyover surveillance, Apache submitted standard permit registration forms to TCEQ that include representations about each facility's operation, including but not limited to information about its operating procedures, pollution control methods and equipment, and sitewide and per-tank maximum emission rates.

92.     With respect to the six (6) facilities identified in Paragraph 90 as permitted under TCEQ's Permit by Rule at the time of the flyover surveillance, Apache submitted registration forms to TCEQ that include representations about each facility's operation, including but not limited to information about operating procedures, pollution control methods and equipment, and

sitewide and per-tank maximum emission rates.

93.     In its certified permit representations to TCEQ, Apache represented a 98 percent reduction efficiency attributable to the use of the flare. However, based on the information provided by Apache to EPA in response to the 114 Request, the Plaintiffs determined that, between October 2019 and December 2020, flare pilot flames at the Bull Run Central Tank Battery, Lee Compressor Station, and Lee Central Tank Battery were "off" more than 30 percent of the time. Whenever a pilot flame was off, all vapors routed to the flare were vented to the atmosphere rather than combusted.

## CLAIMS FOR RELIEF – NEW MEXICO

### Claim 1: Violations of NSPS Subparts OOOO and OOOOa in New Mexico

94.     Paragraphs 1 through 93 are incorporated herein by reference.

95.     Each of the facilities located in New Mexico and identified on Table 1 in Paragraph 16 are oil and natural gas production facilities owned and/or operated by Apache in the State of New Mexico.

96.     The storage vessels located at the six (6) facilities identified in Table 3 below and, subject to a reasonable opportunity for further investigation and discovery, potentially other storage vessels, are storage vessel affected facilities as that term is defined in NSPS Subparts OOOO or OOOOa, as applicable.

| Table 3 |
| --- |
| Tony Federal Battery |
| Thunderbird A Battery |
| Outlaw State Battery |
| Salt Fork 3-4 Fed Com Battery |
| NE Drinkard Satellite Battery |
| NE Drinkard Central Tank Battery/Satellite Battery No. 3 |

97.     Dating from at least the date of the inspection or the flyover surveillance of such

facility and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Apache violated one or more of the following provisions in NSPS Subparts OOOO or OOOOa, as applicable, at each of the facilities identified in Table 3:

    a.   the cover requirements of 40 C.F.R. §§ 60.5411(b) or 60.5411a(b);

    b.   the closed vent system requirements of 40 C.F.R. §§ 60.5411(c) or 60.5411a(c)-(d);

    c.   the VOC standards for storage vessel affected facilities at 40 C.F.R. § 60.5395(d)(1) and (e)(1) or 40 C.F.R. § 60.5395a(a)(2) and (b)(1);

    d.   the continuous compliance requirements of 40 C.F.R. §§ 60.5395(g)(2) and 60.5415(e)(3) or 40 C.F.R. §§ 60.5395a(d)(2) and 60.5415a(e)(3);

    e.   the OVA inspection requirements for closed vent systems and covers at 40 C.F.R. §§ 60.5416(c)(1) and (2) or 40 C.F.R. §§ 60.5416a(c)(1) and (2);

    f.   the recordkeeping requirements at 40 C.F.R. § 60.5420a(c)(15)(i)-(iii) for fugitive emissions components at a well site;

    g.   the annual reporting requirements at 40 C.F.R. § 60.5420(b)(1) and (6) or 40 C.F.R. § 60.5420a(b)(1) and (6);

    h.   the control device requirements of 40 C.F.R. §§ 60.5412(c) and (d), and 60.5412a(c) and (d); and

    i.   the good air pollution control practice requirement at 40 C.F.R. §§ 60.5370(b) or 60.5370a(b).

    98.    Each of the violations alleged in Paragraph 97 is a violation of Section 111(e) of the Act, 42 U.S.C. § 7411(e).

    99.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Apache is liable for

injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred

between January 13, 2009 and November 2, 2015, and $121,275 per day for each violation

occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment

Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of

1996, 31 U.S.C. § 3701 note, and most recently by the Federal Civil Penalties Inflation

Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74 § 701, 129 Stat. 584, 599–601,

40 C.F.R. § 19.4 and 88 Fed. Reg. 89309, 89312 (Dec. 27, 2023).

100.    Pursuant to Section 74-2-12.1(A) of the AQCA, Apache is liable for civil

penalties of up to $15,000 for each day during any portion of which a violation occurs.

### Claim 2: Violations of the GCP-4 and GCP-Oil and Gas

101.    Paragraphs 1 through 93 are incorporated herein by reference.

102.    The Black and Tan 27 Fed Com Battery and the Palmillo 14-15 Battery were, at

the time of the inspection, registered and approved by NMED under the GCP-Oil and Gas

Permit.

103.    Dating from at least the date of the inspection or flyover surveillance and, subject

to a reasonable opportunity for further investigation and discovery, continuing thereafter, Apache

violated one or more of the following conditions in the GCP Permits, as applicable, at the Black

and Tan 27 Fed Com Battery, and the Palmillo 14-15 Battery: GCP-Oil and Gas Conditions

A100.F, A106.C, A205.B, A209.A.(1), B101.A, and B107.A.

104.    The Raven Federal Battery and Crow Federal Battery were, at the time of

inspection, registered and approved by NMED under the GCP-4 Permit.

105.    Dating from at least the date of the inspection or flyover surveillance and, subject

to a reasonable opportunity for further investigation and discovery, continuing thereafter, Apache

violated one or more of the following conditions in the GCP Permits, as applicable, at the Raven Battery and the Crow Battery: GCP-4 Conditions V.1-4, VI.1, VII-5, VII-10, VIII-5, and VIII-10.

106.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Apache is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $121,275 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, and most recently by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74 § 701, 129 Stat. 584, 599–601, 40 C.F.R. § 19.4 and 88 Fed. Reg. 89309, 89312 (Dec. 27, 2023).

107.     Pursuant to Section 74-2-12.1(A) of the AQCA, Apache is liable for civil penalties of up to $15,000 per day for each violation.

**CLAIMS FOR RELIEF – TEXAS**

**Claim 3: Violations of NSPS Subpart OOOO/OOOOa in Texas**

108.     Paragraphs 1 through 93 are incorporated herein by reference.

109.     The facilities located in Texas and identified on Table 1 in Paragraph 16 are oil and natural gas production facilities owned and/or operated by Apache in the State of Texas.

110.     Each of the storage vessels located at the seven (7) facilities listed in Table 4, below and, subject to a reasonable opportunity for further investigation and discovery, potentially other storage vessels, are storage vessel affected facilities as that term is defined in NSPS Subparts OOOO or OOOOa, as applicable.

| **Table 4** |
| --- |
| Bull Run Battery |
| Lee Central Tank Battery |
| Dixieland Lee Compressor Station |
| Bragg Central Tank Battery |
| Falcon Central Tank Battery |
| Falcon 2 Central Tank Battery |
| Chaparral Battery 89 Central Tank Battery |

111. Dating from at least the date of the flyover surveillance and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Apache violated one or more of the following provisions in NSPS Subparts OOOO or OOOOa, as applicable, at each of the facilities listed in Table 4:

a. the cover requirements of 40 C.F.R. §§ 60.5411(b) or 60.5411a(b);

b. the closed vent system requirements of 40 C.F.R. §§ 60.5411(c) or 60.5411a(c)-(d);

c. the VOC standards for storage vessel affected facilities at 40 C.F.R. §§ 60.5395(d)(1) and (e)(1) or 40 C.F.R. §§ 60.5395a(a)(2) and (b)(1);

d. the continuous compliance requirements of 40 C.F.R. §§ 60.5395(g)(2) and 60.5415(e)(3) or 40 C.F.R. §§ 60.5395a(d)(2) and 60.5415a(e)(3);

e. the OVA inspection requirements for closed vent systems and covers at 40 C.F.R. §§ 60.5416(c)(1) and (2) or 40 C.F.R. §§ 60.5416a(c)(1) and (2);

f. the recordkeeping requirements at 40 C.F.R. §§ 60.5420a(c)(15)(i)-(iii) for fugitive emissions components at a well site;

g. the annual reporting requirements at 40 C.F.R. §§ 60.5420(b)(1) and (6) or 40 C.F.R. §§ 60.5420a(b)(1) and (6);

h.   the control device requirements of 40 C.F.R. §§ 60.5412(c) and 60.5412(d), and 60.5412a(c) and 60.5412a(d); and

i.   the good air pollution control practice requirement at 40 C.F.R. §§ 60.5370(b) or 60.5370a(b).

112.   Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Apache is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $121,275 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, and most recently by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74 § 701, 129 Stat. 584, 599–601, 40 C.F.R. § 19.4 and 88 Fed. Reg. 89309, 89312 (Dec. 27, 2023).

## Claim 4: Violations of the Oil and Gas Standard Permit

113.   Paragraphs 1 through 93 are incorporated herein by reference.

114.   Dating from at least the date of the flyover surveillance and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, at each of the Facilities listed in Table 5, Apache violated one or more of the following provisions of the Oil and Gas Standard Permit: Paragraphs (e)(1), (e)(5), (e)(6), and (e)(11).

| Table 5 |
|---|
| Bull Run Battery |
| Lee Central Tank Battery |
| Dixieland Lee Compressor Station |
| Dixieland Grant Compressor Station |
| Falcon Compressor Station |
| Magpie Cardinal Central Tank Battery |

115.   Based on the VOC emissions detected by OGI during flyover surveillance, dating

from at least the date of the flyover surveillance and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Apache failed to adhere to the standard permit registration representations for the Oil and Gas Standard Permit (Non-rule) at each of the facilities listed in Table 5, in violation of 30 TAC 116.615(2), which requires adherence to standard permit representations with regard to construction, operations and emissions, including construction plans, operating procedures, pollution control methods, production, operational limits and maximum emission rates.

116.    Based on the VOC emissions detected by OGI during flyover surveillance, dating from at least the date of the flyover surveillance and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, Apache failed to comply with 30 TAC 116.615(9), which states that facilities may not be operated unless all air pollution emission capture and abatement equipment is maintained in good working order and operating properly during normal facility operations.

117.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Apache is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $121,275 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, and most recently by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74 § 701, 129 Stat. 584, 599–601, 40 C.F.R. § 19.4 and 88 Fed. Reg. 89309, 89312 (Dec. 27, 2023).

## Claim 5: Failure to Comply with Texas Permit by Rule

118.    Paragraphs 1 through 93 are incorporated herein by reference.

119.     Dating from at least the date of the flyover surveillance and, subject to a reasonable opportunity for further investigation and discovery, continuing thereafter, as to each of the facilities listed in Table 6, Apache failed to adhere to the representations made in the facility's Permit by Rule registration with respect to capturing and routing emissions to a control device or VRU, in violation of 30 TAC § 106.6(b) and (c), and failed to maintain in good condition and properly operate all emissions control equipment during operation of the facility, in violation of 30 TAC § 106.4(c).

| Table 6 |
| --- |
| Bragg Central Tank Battery |
| Falcon Central Tank Battery |
| Falcon 2 Central Tank Battery |
| Seagull-Pelican Central Tank Battery |
| Chaparral 89 Central Tank Battery |
| Navajo Central Tank Battery |

120.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Apache is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation that occurred between January 13, 2009 and November 2, 2015, and $121,275 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, and most recently by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74 § 701, 129 Stat. 584, 599–601, 40 C.F.R. § 19.4 and 88 Fed. Reg. 89309, 89312 (Dec. 27, 2023).

**PRAYER FOR RELIEF**

WHEREFORE, based on the above allegations, Plaintiffs request that this Court:

A.     Permanently enjoin Defendant from further violating the CAA, the AQCA, the TCAA, the regulations implementing those statutes, and all applicable permits;

B.      Order Defendant to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA, the AQCA, the TCAA, the regulations implementing those statutes, and all applicable permits;

C.      Assess a civil penalty against Defendant for each violation of the applicable provisions of the Act, the New Mexico SIP, the Texas SIP, and the applicable federally enforceable permits of up to $121,275 per day for each violation occurring on or after November 2, 2015;

D.      Assess a civil penalty against Defendant for each violation of the AQCA, its implementing regulations, and all applicable state-issued permits of up to $15,000 per day for each violation;

E.      Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


_____
NICOLE VEILLEUX
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Benjamin Franklin Station
Washington, DC 20044-7611
(202) 616-8746
nicole.veilleux@usdoj.gov


ALEXANDER M. M. UBALLEZ
United States Attorney

RUTH F. KEEGAN
Assistant United States Attorney
District of New Mexico
P.O. Box 607
Albuquerque, NM  87103
Phone: (505) 224-1470
Mobile: (505) 206-4197
Fax: (505) 346-7296
Ruth.F.Keegan@usdoj.gov


OF COUNSEL:
ALEX CHEN
Attorney-Advisor, Air Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460
(202) 565-0082
chen.alex@epa.gov


ALEXANDREA ROLAND
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, TX 75270
(214) 665-2753
roland.alexandrea@epa.gov

JAMES C. KENNEY
Cabinet Secretary
New Mexico Environment Department
1190 St. Francis Drive
Santa Fe, New Mexico  87501
(505) 470-6161
James.kenney@state.nm.us


CHRISTOPHER VIGIL (NM Bar # 141937)
Special Assistant Attorney General
New Mexico Environment Department
121 Tijeras Ave., NE, Suite 1000
Albuquerque, New Mexico 87102
(505) 469-4696
christopherj.vigil@state.nm.us
Attorney for Plaintiff New Mexico Environment
        Department